IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMCA-063

Filing Date:  May 27, 2009

Docket No.  27,943

JOYCE CARTER,

  Petitioner-Appellant,

v.

NEW MEXICO HUMAN SERVICES
DEPARTMENT,

  Respondent-Appellee.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Ted Baca, District Judge

New Mexico Legal Aid, Inc.
Marcia Lieberman
Albuquerque, NM

for Appellant

New Mexico Human Services Department
Office of General Counsel
Rachelle Klump
Carol A. Baca
Santa Fe, NM

for Appellee

OPINION

KENNEDY, Judge.

{1}     We granted certiorari in this case to clarify the boundaries of evidentiary procedure as practiced in state Medicaid benefits hearings.  Appellant Joyce Carter (Carter) applied for home healthcare assistance through New Mexico's Medicaid program and was denied benefits because her personal resources exceeded the allowable statutory limit.  Carter

1

appealed and was given a "fair hearing"[1] by Appellee New Mexico Human Services Department (the Department) which affirmed the denial by the original caseworker. The hearing officer refused to consider Carter's bank statement from February 2006 because the statement was unavailable to the original caseworker. The district court affirmed the Department's decision, and we reverse. We hold that both the district court and the Department misapplied the law because the hearing officer was required to consider Carter's February 2006 bank statement. We remand to the Department for a reconsideration of the evidence consistent with this opinion.

**BACKGROUND**

**{2}**     Medicaid is a federal program which grants appropriations to the states to provide medical care to eligible disabled and elderly. 42 U.S.C. § 1396-1 (1984). The federal regulations promulgated by the Department concerning the operation of the Medicaid program are found at 42 C.F.R. Section 400.200-505.19 (2009). To comply with these regulations, the Department has been designated the single state agency to administer the Medicaid plan. NMSA 1978, § 9-8-13 (1981). It has the power to adopt all rules and regulations concerning the operation of Medicaid in accordance with federal law, federal regulations, and state law. NMSA 1978, § 9-8-13 (2007); NMSA 1978, § 27-2-12 (2006). The Disabled and Elderly Waiver (D & E Waiver) program constitutes one of the many benefits available to persons under Medicaid. It is a state-administered program that provides home healthcare services to individuals who would otherwise be at risk for institutionalization. 8.290.400.9 NMAC (2/1/1995). In order to receive a D & E Waiver, applicants must meet both medical and financial qualifications. The medical qualifications are determined by private contractors who work in conjunction with the State, and the financial qualifications are determined by the Department through its caseworkers. Competition for admission into the program is fierce, and applicants often wait for extended periods of time before receiving a slot.

**{3}**     Carter is one such applicant. After waiting two years, she finally received a slot in the D & E Waiver program on September 27, 2005, and was interviewed by a Department caseworker on November 4, 2005. On December 20, 2005, Carter submitted bank statements from November and December to the caseworker in order to establish financial eligibility. Based on these statements, the caseworker determined that Carter exceeded the resource limitations for the program during both months. On February 9, 2006, by formal letter, the Department informed Carter that her application had been denied. It stated, "At [the] time of your interview, you [were] not financially eligible for the program." This letter specifically refers to an attempt by Carter after the December interview to prove that her resources had decreased to a point of making her eligible, but states that her finances subsequent to December (time of application) would not be considered. The letter invites

---

[1] "Fair Hearing" is no more than the title of the statutory section that affords an applicant who has been denied benefits a hearing: NMSA 1978 § 27-3-3 (1991).

Carter to reapply for benefits and begin the process anew.

**{4}** Carter appealed the decision of the caseworker to the Administrative Hearings Bureau and received a hearing in accordance with Section 27-3-3. At that hearing, which was held on March 16, 2006, Carter introduced her bank statement from February 2006 in order to establish her eligibility. The hearing officer admitted the statement into evidence but did not consider it, and in his report, he stated that "[t]he [Department] has met its burden of showing that it correctly denied . . . Carter's request for D & E Waiver Program services because she exceeded the resource limits." In a letter dated May 18, 2006, the Department adopted the hearing officer's findings of fact and conclusions of law and officially affirmed the caseworker's denial of Carter's application. The letter reiterates the hearing officer's language stating that, "the [Department] met the burden of proving that it correctly denied . . . Carter's request for D & E Waiver Program services because she exceeded the resource limits."

**{5}** Carter next appealed to the district court. She urged the court to reverse the Department's decision, arguing, among other things, that the hearing officer should have considered her February bank statement. The court found, in a memorandum opinion and order, her argument unpersuasive and affirmed the Department's determination. It analyzed the issue of whether a hearing officer should consider evidence not available to the original caseworker and held that the Department "acted in accordance with the law in limiting its review to the months examined by the" original caseworker. The court stated that the Department could not have examined any months past December without the aid of a "crystal ball" and that the Department "must fix a date at some point."

**{6}** On certiorari, Carter argues that the district court's order was erroneous. She reasserts her argument that the hearing officer should have considered her February bank statements. The Department contends that the February bank statement was properly ignored and that the district court's decision was correct.

**{7}** Because we hold that both the district court and the Department misapplied the law and thus erroneously failed to consider Carter's February bank statement, we have no need to address Carter's remaining arguments.

**DISCUSSION**

**A.      Standard of Review**

**{8}** We will reverse the determination of an administrative agency where it acts fraudulently, arbitrarily, or capriciously; its decision is not supported by substantial evidence based on the whole record before it; or its actions are outside the scope of its authority or otherwise not in accordance with the law. *Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶¶ 14 n.7, 16-17, 133 N.M. 97, 61 P.3d 806. We do not review administrative agency decisions de novo, and we do not substitute our judgment for

that of the agency. *Id.* ¶ 17. Although we accord deference to an agency's interpretation of its own statutes, *Groendyke Transp., Inc. v. N.M. State Corp. Comm'n*, 101 N.M. 470, 477, 684 P.2d 1135, 1142 (1984), we will, nevertheless, reverse an agency determination in order to correct a misapplication of the law. *Rio Grande Chapter of Sierra Club*, 2003-NMSC-005, ¶ 13.

**B.      Consideration of Carter's February Bank Statement**

**{9}**      Considering whether the hearing officer correctly refused to consider Carter's February bank statement, two sections of the New Mexico Administrative Code help guide our analysis. First, 8.290.500.9 NMAC (1/1/1997) provides that applicants for Medicaid institutional care "must meet, or expect to meet, all financial eligibility criteria in the month for which a determination of eligibility is made." Second, 8.281.500.10(A) NMAC (7/31/1997) provides that in order to determine an applicant's eligibility, the Division must look at the applicant's resources as of the "first moment of the first day of the month." *Id.* "Changes in the amount of countable resources during a month do not affect eligibility or ineligibility for that month." *Id.*

**{10}**      Whether an administrative hearing officer may consider evidence unavailable to the original caseworker has been developed in the line of cases beginning with Saenz v. N.M. Dep't of Human Servs., Income Support Div., 98 N.M. 805, 653 P.2d 181 (Ct. App. 1982), continuing through *Cruz v. N.M. Dep't of Human Servs., Income Support Div.*, 100 N.M. 133, 666 P.2d 1280 (Ct. App. 1983), and ending with *Landavazo v. N.M. Dep't of Human Serv., Income Support Div.*, 106 N.M. 715, 749 P.2d 538 (Ct. App. 1988). In *Saenz*, we heard the appeal of Sammy Saenz, who applied for and was denied general assistance benefits when his hearing officer refused to consider a medical report that was not originally available to his caseworker. 98 N.M. at 806, 653 P.2d at 182. We reversed the denial of benefits and held that the agency had a duty to consider the new evidence even though it was not available to the original caseworker. *Id.* at 808, 653 P.2d at 184. *Cruz* presented a similar set of facts. Esther Cruz was denied financial assistance under the Aid to Families with Dependent Children Program when the agency determined that she exceeded the resource limitations for qualification. 100 N.M at 134-35, 666 P.2d at 1281-82. At the hearing, the hearing officer refused to consider evidence that was unavailable to the original caseworker, and we again reversed, holding that "[t]he evidence that we consider is the evidence contained in the record of the 'fair hearing.'" *Id*. at 135, 666 P.2d at 1282 (internal quotation marks and citation omitted). It makes no difference that the evidence in question was unavailable to the original caseworker. *Id.*

**{11}**      In *Landavazo*, we regarded another similar set of facts and took the opportunity to refine the holdings of both *Saenz* and *Cruz*. Richard Landavazo was denied food stamps when the agency determined that he exceeded the resource limitation for benefits as a result of the value of his vehicle. *Landavazo*, 106 N.M. at 717, 749 P.2d at 540. He appealed, and between the initial denial of benefits and the hearing, Landavazo, who was physically

4

disabled, made modifications to his vehicle which would have removed it from consideration as a "resource" because such modifications were a result of his disability. *Id.* at 716, 749 P.2d at 539. At the hearing, Landavazo relied on *Saenz* and *Cruz* and argued that the modifications, though evidence of them was unavailable to the original caseworker, should nevertheless be considered by the hearing officer. *Landavazo*, 106 N.M. at 716, 749 P.2d at 539. The hearing officer rejected the argument and affirmed the decision of the caseworker. *Id.* On appeal, Landavazo renewed his reliance on *Saenz* and *Cruz* and urged us to reverse the agency's decision. We refused and held that *Saenz* and *Cruz* only apply when new evidence offered by an applicant tends to establish eligibility "*at the time* HSD's representatives originally took action terminating or denying . . . benefits." *Landavazo* at 717, 749 P.2d at 540. As we stated, the modifications Landavazo made to his vehicle were made "after the county office denied his application, and would not establish [his] eligibility for benefits" at the time of the original denial. *Id.* Stated differently, regardless of whether the original caseworker had access to the evidence, a hearing officer should consider new evidence that tends to establish eligibility *at the time of the original denial.*

**{12}** In light of the rule we announced in *Landavazo*, we hold that the hearing officer should have considered Carter's February bank statement because it tended to establish Carter's eligibility at the time of the original caseworker's denial on February 9, 2006. The Department would have us hold that *Landavazo* only applies to evidence that tends to establish eligibility at the moment the caseworker first considers an application, but the Department misinterprets that case. As we stated, the hearing officer must consider the evidence if it tends to "establish the applicants eligibility for benefits *at the time* HSD's representatives originally took action *terminating or denying*" benefits. *Id.* at 717, 749 P.2d at 540 (second emphasis added). The district court likewise misinterprets *Landavazo*, but interestingly, relies on the following quote: "[t]he new evidence . . . [Landavazo submitted] constituted a change in circumstances after the county office denied his application, and would not establish [his] eligibility for benefits at the time." *Id.* (emphasis omitted). This language supports the notion that the evidence must tend to establish the applicant's eligibility prior to termination or denial and not at the time of first consideration, as the Department urges.

**{13}** Neither party disputes that the caseworker denied Carter's application for a D & E Waiver by formal letter on February 9, 2006, and that the letter is clear that Carter had presented subsequent information to the caseworker that the caseworker rejected. After receiving this notice, Carter appealed for a hearing on February 21, 2006. The hearing was held on March 16, 2006, at which time the hearing officer refused to consider her February bank statement. Applying the rule from *Landavazo*, above, we hold that the date of official Department denial was February 9, 2006, and because the Department must assess an applicant's resources as of the "first moment of the first day" of the month, 8.281.500.10(A) NMAC (7/31/1997), the hearing officer should have considered Carter's February bank statement when proffered. As the district court stated, we must "fix a date at some point," and today we hold that the appropriate date is the date of the Department's official notice of denial.

**{14}** The Department asserts that today's holding will create a back-up in an already clogged benefits system, allowing applicants to "delay a decision on . . . [their] application[s] by continuing to present additional information for subsequent time periods." But the Department ignores the language of 8.290.600.10 NMAC (1/1/97), which states that all applications for D & E Waivers "must be acted upon and notice of approval, denial, or delay sent out within 30 days from the date of application, or within 60 days if a disability determination is required." Since we find no evidence in the record that a disability determination was required or conducted, the Department had 30 days from the time of Carter's completed application to officially deny her benefits. Carter's application was completed and submitted on December 20, 2005, and since no disability determination was required, the Department should have denied Carter's application by January 20, 2006. Instead, its determination was not made until February 9, 2006, by which time it became aware of and rejected further evidence of Carter's eligibility. Refusal to take this information into account in the subsequent hearing rendered that proceeding unfair. If the Department had acted within the regulatory 30-day window, the February bank statement would have presented no evidentiary problem because it would not have tended to establish eligibility prior to the caseworker's original denial of benefits. Since it did not, and Carter's situation changed by the time the determination was made by the caseworker, the Department was obligated to take those facts into account.

**CONCLUSION**

**{15}** We reverse the order of the district court affirming the Department's decision which denied Carter's application for a D & E Waiver. We hold that the Department's decision was not in accordance with the law and was therefore erroneous. We remand to the Department for a consideration of the February bank statement consistent with this opinion.

**{16}** **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**MICHAEL E. VIGIL, Judge**

**Topic Index for *Carter v. New Mexico Human Services Department*, No. 30,640**

AL                          ADMINISTRATIVE LAW AND PROCEDURE

| | |
|---|---|
| AL-AA | Administrative Appeal |
| AL-AC | Arbitrary and Capricious Actions |
| AL-EV | Evidence |
| AL-HR | Hearings |
| AL-SC | Scope of Review |
| AL-SR | Standard of Review |
| AL-TM | Timeliness |
| | |
| **PA** | **PUBLIC ASSISTANCE** |
| PA-MM | Medicare and Medicaid |
| PA-PR | Procedure |