This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**SUZANNE CALLES**,

Plaintiff-Appellant,

v.                                                    NO.   32,076

**NEW MEXICO HUMAN SERVICES DEPARTMENT,**

Defendant-Appellee.

**APPEAL FROM A FINAL DECISION OF THE NEW MEXICO HUMAN SERVICES DEPARTMENT**
**Aldo Jadnicek, Administrative Law Judge**

New Mexico Legal Aid
Alicia Clark
Silver City, NM

for Appellant

New Mexico Human Services Department
Nathan A. Adams, Special Assistant Attorney General
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

Suzanne Calles (Plaintiff) appeals the Human Services Department's (HSD) denial of benefits under the Temporary Assistance for Needy Families (TANF) program. On June 5, 2012, this Court filed a notice of proposed summary disposition, proposing to reverse HSD's Decision. HSD filed a memorandum in opposition to proposed summary affirmance, which we have given due consideration. We reverse HSD's denial of TANF benefits to Calles.

Calles raises two issues, which we address together: (1) whether it was reversible error for HSD to deny Calles's application for TANF based on ISD Policy Clarification ISD-PC-FS-PC-09-14, where undisputed testimony and other evidence demonstrated that her child, R.G., resided primarily with her and that she exercised parental control over him and was primarily responsible for his care and support; and (2) whether it was reversible error for HSD to deny Calles's application for TANF where HSD has the burden to prove its action was reasonable by a preponderance of the evidence, and Calles presented an unrebutted prima facie case demonstrating that she resided with R.G. and was the party primarily responsible for providing care and support for him and that she exercised parental control over him. [DS 6, 9]

"The court shall set aside a decision and order of the director only if found to be: (1) arbitrary, capricious[,] or an abuse of discretion; (2) not supported by substantial evidence in the record as a whole; or (3) otherwise not in accordance with law." NMSA 1978, § 27-2B-13(K) (1998); *see* 8.100.970.14(C)(2) NMAC. "Although we accord deference to an agency's interpretation of its own statutes, we will, nevertheless, reverse an agency determination in order to correct a misapplication of the law." *Carter v. N.M. Human Servs. Dep't*, 2009-NMCA-063, ¶ 8, 146 N.M. 422, 211 P.3d 219 (internal citations omitted). "HSD has the burden of proving the basis to support its proposed action by a preponderance of the evidence. The action or proposed action being appealed will be upheld if the evidence supporting the action is more convincing than the evidence offered in opposition to the action." 8.100.970.11(F) NMAC.

On January 23, 2012, Calles applied for benefits under the SNAP (formerly, Food Stamps), Medicaid, and TANF programs. [RP 3] Only the TANF benefits are at issue in the present appeal. After benefits were denied the same day, Calles requested a fair hearing on February 1, 2012, and the hearing was held on March 2, 2012. [RP 1, 32] Among other things, the hearing officer found that the Children, Youth and Families Department (CYFD) had taken R.G. into custody on May 24, 2011, and placed him in the household of his father (Father). [RP 33] R.G. had

previously been on Calles's TANF case and was removed from her case effective June 30, 2011. [Id.] Father applied for TANF benefits on behalf of himself and R.G. on January 3, 2012, twenty days before Calles applied, and benefits were approved the same day. [RP 34 ¶ 3]

On January 13, 2012, R.G. was taken into custody by police due to allegations of battery against a household member. [RP 34 ¶ 4] The district court ordered him conditionally released to his parents on January 17, 2012. [RP 34 ¶ 5] Only Calles, not Father, signed the order of conditional release, in which she agreed to provide for R.G.'s supervision and care. [Id.] Although R.G. spends at least one day per month with Father, he spends the majority of his time with Calles or at school. [RP 34 ¶ 8]

Based on the above factual setting, the hearing officer recommended that Calles's application on behalf of herself and R.G. should have been approved. The acting director of HSD's Income Support Division disagreed with the recommendation and denied Calles's application. The acting director's Hearing Decision states:

> To be eligible for TANF[,] a dependent child must be living in the home of a parent or specified relative[,] and the caretaker must be living, or considered to be living, in the home with the child, as per regulation at 8.102.400.14(A) NMAC. However, certain circumstances may require the child or caretaker temporarily reside elsewhere to meet specific needs identified as essential to the care and support of the child as per regulation at 8.102.400.14(B).

4

Testimony heard during the hearing validates [R.G.] was placed in . . . [F]ather's custody by CYFD, receives benefits as a member of . . . [F]ather's SNAP, TANF[,] and JUL Medicaid cases[,] thus indicating he resides with . . . [F]ather. Documentation and testimony presented during the hearing indicates [R.G.] is a household member on [Calles's] lease; that [Calles is] responsible for his school attendance and the responsible party for his conditional release from police custody. In this instance, [R.G.'s] primary residence and caretaker status remain questionable. Therefore, . . . [HSD] was correct in denying [Calles's] application for TANF on [R.G.'s] behalf.

The two sections of the New Mexico Administrative Code cited in the first paragraph quoted above provide as follows:

A.    For a NMW benefit group to exist, a dependent child must be living in the home of a parent or specified relative as specified in 8.102.400.15 NMAC. The relative must be the primary caretaker for the child and must be within the fifth degree of relationship, as determined by New Mexico's Uniform Probate Practice Code (see Subsection A of 8.102.400.16 NMAC). To be considered as the caretaker, the specified relative in a NMW benefit group, the participant must be living, or considered to be living, in the home with the child.

B.    A child or the caretaker relative may in certain situations be temporarily domiciled away from home, but nonetheless be considered as living at home. Such situations result when the parent or caretaker relative has decided to domicile the child elsewhere because of a specific need identified by the parent or caretaker relative and provided that the parent or caretaker relative remains responsible for providing care and support to the child and retains parental control over the child.

8.102.400.14 NMAC.

We propose to conclude that the acting director's decision is "not supported by substantial evidence in the record as a whole[.]" § 27-2B-13(K). The decision does

not identify, nor do we find, any evidence that R.G. is merely "temporarily domiciled away" from Father's home and plans to return there as his primary residence, or that Father "remains responsible for providing care and support to the child and retains parental control over the child." Rather, Calles specifically took on these responsibilities in the conditions of release she signed and in a school attendance contract. [RP 18, 23-24] To the extent that the acting director may have relied on the fact that CYFD placed R.G. in Father's custody in May 2011, we find no court order requiring that placement as an ongoing matter. Further, we find essentially nothing concerning Father's present intent or suitability to retake custody of R.G. at any point, other than the fact that HSD approved his application for benefits twenty days before receiving Calles's application.

Calles's docketing statement mentions Policy Clarification ISD-PC-FS-PC-09-14. In relevant part, this states: "Upon verification of all eligibility factors, if they have no contact (are not spending at least one day a month) with the existing household, the child can be removed and placed on the new case for the ongoing month." [RP 37] The hearing officer noted that R.G. had been on Calles's benefits cases before CYFD took him into custody in May 2011. [RP 38] Father applied for and was granted benefits on January 3, 2012. [RP 34 ¶ 3] Twenty days later, HSD then refused to add R.G. back onto Calles's case after she provided evidence that she

again had custody of and responsibility for him upon his release by the Sixth Judicial District Court. [RP 38] Given this sequence of events, we propose to conclude that the Policy Clarification in these circumstances is inconsistent with HSD regulations providing that "[a] child lives with a participant when . . . the participant's home is the primary place of residence for the child, as evidenced by the child's customary presence in the home[.]" 8.102.400.15(A) NMAC.

In its memorandum in opposition, HSD asserts that "[a]bsolutely no evidence was presented from which it could be found that [Calles] was ever given custody of R.G., in contrast with the clear and formal CYFD order placing R.G. in [Father's] custody." [MIO 5] As noted above, the formal CYFD order in question does not appear in the record, and we thus cannot determine whether the order specified any time frame or placed any restrictions on Calles's contact with R.G.

HSD's memorandum also asserts that Calles's docketing statement claimed that HSD had relied on Policy Clarification FS-PC-03-033 for its decision denying TANF benefits. HSD asserts that this Policy Clarification applies only to the SNAP program, not TANF. We find no mention of the specified Policy Clarification in Calles's docketing statement, but to the extent that HSD meant ISD-PC-FS-PC-09-14, which Calles does cite, we observe that Calles had applied for TANF, SNAP, and Medicaid. It seems likely that HSD would have found R.G.'s residence for TANF purposes to

be consistent with his residence for SNAP purposes. Further, if ISD-PC-FS-PC-09-14 in fact does not apply to TANF, the only one of the three programs before us, then neither the Department nor this Court is bound by that document's suggestion that R.G. must remain on Father's TANF case if he spends at least one night a month with Father. [RP 37]

Calles presented ample evidence that R.G. now lives with her and she is responsible for his supervision and care. HSD presented essentially no evidence that R.G. actually lives with Father and is merely "temporarily domiciled away" with Calles. We conclude that Calles's application for TANF benefits should have been approved.

For the reasons stated above, we reverse the hearing decision and remand to HSD for further proceedings consistent with this Opinion.

**IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**

_____
**J. MILES HANISEE, Judge**